UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION No. 09-CV-10428-RGS

CAROL SURPRENANT, Individually and
on Behalf of All Others Similarly Situated

v.

MASSACHUSETTS TURNPIKE AUTHORITY,
MASSACHUSETTS PORT AUTHORITY, and
MASSACHUSETTS DEPARTMENT OF TRANSPORTATION

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS

February 4, 2011

STEARNS, D.J.

In this putative class action, Carol Surprenant, a Rhode Island resident, alleges that

certain concessionary bridge and tunnel tolls granted by the Massachusetts Turnpike

Authority (MTA) and the Massachusetts Port Authority (MassPort) to local residents

discriminate against out-of-state travelers in violation of the Dormant Commerce Clause.[1]

The Massachusetts Department of Transportation (MassDOT), the successor to the MTA

and MassPort, moves for dismissal pursuant to Fed. R. Civ. P. 12(c), arguing that as a

---

[1]The Dormant Commerce Clause is not explicitly stated in the U.S. Constitution, but is inferred as a negative implication of art. 1, § 8, which grants Congress the power to regulate commerce "among the several States." As construed by the Supreme Court, the Dormant Commerce Clause prohibits States from enacting legislation that would burden or discriminate against interstate commerce. The doctrine is riddled with qualifications and exceptions. See, e.g., White v. Massachusetts Council of Constr. Emp'rs, Inc., 460 U.S. 204, 208 (1983); Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970). At least two Justices (Scalia, J., and Thomas, J.) are of the view that there is no textual or historical basis for a Dormant Commerce Clause and that positing its existence conflicts with the Tenth Amendment's reservation of all nondelegated powers to the States. See, e.g., Tyler Pipe Indus., Inc. v. Dep't of Rev., 483 U.S. 232, 257-258 (1987) (Scalia, J., dissenting).

recently constituted arm of the Commonwealth, it is immune from suit under the Eleventh Amendment.

Surprenant filed her six-count Complaint on March 20, 2009.[2]  On March 4, 2010, the court issued a Memorandum and Order dismissing her claim under the Privileges and Immunities Clause, art. 4, § 2 (Count II).[3]  The court denied the motion to dismiss the Dormant Commerce Clause claim (Count I) and permitted limited discovery on two issues: whether "the tolls charged Surprenant are based on some fair approximation of the cost of her use of the facilities"; and whether any burden imposed on Surprenant (and similarly situated travelers) was "clearly excessive in relation to the *local* benefits conferred by the preferred resident discounts." Surprenant v. Massachusetts Tpk. Auth., 2010 WL 785306, at *7  (D. Mass. Mar. 4, 2010) (emphasis in original).

An important development occurred in the meantime.  On November 1, 2009,  the Massachusetts Legislature created a new state agency, the MassDOT.  The Legislature dissolved the MTA and shifted all of its "functions, assets, and liabilities" to the MassDOT. Title to the Ted Williams, the Sumner and Callahan Tunnels, and the Tobin Memorial Bridge was transferred from the MTA and MassPort to the MassDOT. The Legislature also placed the responsibility for administering the resident discount toll programs with the

---

[2]Surprenant has waived her Equal Protection Claim.  Opp'n at 2 n.3.  The remaining counts (42 U.S.C. § 1983; unjust enrichment; and restitution) are derivative of her constitutional claims or prayers for substitute equitable relief.

[3]This Clause, which traces its lineage to the original (unamended) U.S. Constitution, guarantees citizens of each State the right to unrestricted interstate travel.  See Paul v. Virginia, 75 U.S. 168, 170-171 (1868), overruled on other grounds, United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533 (1944).

MassDOT. See Mass. Gen. Laws ch. 6C, § 13. On April 5, 2010, Surprenant filed an Amended Complaint substituting the MassDOT as the named defendant. The MassDOT answered, raising the Eleventh Amendment as an affirmative defense. On September 27, 2010, the MassDOT filed this motion for judgment on the pleadings.

Surprenant makes two arguments in the attempt to fend off a dismissal. First, she contends that in abolishing the MTA, the Legislature expressly forbade the MassDOT, as the MTA's successor, from raising Eleventh Amendment immunity in pending actions. Second, she argues that in transferring MassPort's contracts to the MassDOT, the Legislature provided that "[n]o existing right or remedy of any character shall be lost, impaired, or affected by this act," Mass. St. 2009, ch. 25, § 133(b)(iii), which she interprets as barring the MassDOT from asserting any right that might be disabling to a plaintiff.

Because the court agrees that it is divested of jurisdiction by the Eleventh Amendment, the motion for judgment on the pleadings will be allowed.

BACKGROUND

The underlying facts are set out in the court's March 4, 2010 Memorandum and Order and are repeated here only in their essentials. Surprenant, a resident of Washington County, Rhode Island, is a retired college professor. She drives frequently to Maine for tourism and to other parts of New England to conduct a part-time consulting business. She pays the regular toll amount when she crosses the Tobin Bridge traveling to the North country, and when she uses the Ted Williams Tunnel to catch a flight at Logan Airport.

The MTA introduced the Tunnel Communities Resident Discount Program in 1995

pursuant to a legislative mandate. Under the Program, residents of East Boston, South Boston, Boston's North End, Chelsea, and Charlestown, receive discounted tolls. See 730 CMR 7.03(9); Mass. Gen. Laws ch. 6(C), § 13(b). The tunnel toll paid by residents of these communities is fixed permanently at the amount charged in August of 1995, that is $0.40. Non-resident, non-commercial vehicles that are not enrolled in the FastLane program presently pay $3.50 to use the Tunnels; FastLane participants pay $3.00.[4] See 740 C.M.R. 11.03. Chelsea and Charlestown residents who enroll in the Tobin Bridge Resident Discount Program pay $0.30; while all other users pay $3.00 (except FastLane participants who pay $2.50).

## DISCUSSION

A Rule 12(c) motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss."[5] Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008). Because a Rule 12(c) "motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom" in the nonmovant's favor. R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).

---

[4]The Fast Lane Program is an electronic toll collection system. It requires that a vehicle be equipped with a state-issued transponder. FastLane is available to both in-state and out-of-state drivers.

[5]To survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citations omitted). See also Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95-96 (1st Cir. 2007).

A Rule 12(c) motion differs from a Rule 12(b)(6) motion in that "it implicates the pleadings as a whole." Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 54-55 (1st Cir. 2006). Filed after the close of the pleadings, a Rule 12(c) motion is "based solely on the factual allegations in the complaint and answer . . . ." NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 8 (1st Cir. 2002).

The Eleventh Amendment states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. "The Supreme Court . . . has expanded the doctrine of sovereign immunity beyond the literal words of the Eleventh Amendment, holding that state governments, absent their consent, are not only immune from suit by citizens of another state, but by their own citizens as well." Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 529 n.23 (1st Cir. 2009), citing Alden v. Maine, 527 U.S. 706, 728-729 (1999). Because a State, its agencies, and agency officials are not "persons" for purposes of § 1983, these entities are not subject to suit for money damages in the federal courts without the State's consent or a clear abrogation of State sovereignty by Congress. Will v. Michigan Dep't of State Police, 491 U.S. 58, 65-67 (1989). "The Eleventh Amendment largely shields States from suit in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals." Pastrana-Torres v. Corporacion de Puerto Rico Para La Difusion Publica, 460 F.3d 124, 126 (1st Cir. 2006), quoting Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 39 (1994).

The Commonwealth has not consented to being sued for money damages under §

1983 in either the federal courts or in its own courts.  Woodbridge v. Worcester State

Hosp., 384 Mass. 38, 44-45 (1981).  See also Inyo Cnty. v. Paiute-Shoshone Indians of

the Bishop Cmty., 538 U.S. 701, 709 (2003) (a sovereign Indian tribe, like a State, is not

subject to suit under section 1983).  A state entity is similarly immune from suit if it

functions as an "arm of the state."  Coggeshall v. Mass. Bd. of Registration of

Psychologists, 604 F.3d 658, 662 (1st Cir. 2010); In re Dupont Plaza Hotel Fire Litig., 888

F.2d 940, 942 (1st Cir. 1989).  Whether an agency is in fact an "arm of the state" is

determined by applying federal law.  Regents of the Univ. of California v. Doe, 519 U.S.

425, 429 n.5 (1997).  The federal test considers, among other factors, the agency's ability

to satisfy judgments from its own funds, whether its functions are governmental or

proprietary, whether the agency is separately incorporated, the extent to which the State

exerts control over the agency, whether the agency has the power to sue in its own right,

whether its property is taxed by the State, and whether the State has immunized itself from

the agency's acts or omissions.  Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer

Auth., 991 F.2d 935, 939-940 (1st Cir. 1993).

That the MassDOT is an arm of the Commonwealth for purposes of the Eleventh

Amendment is not disputed by Surprenant.[6]  She objects instead to a post hoc absolution

of the MTA, as the predecessor of the MassDOT, from liability for its past actions on

---

[6]Any lingering doubt on this point was settled by Mass. Stat. 2010, ch. 454, §§ 3-4, signed into law by Governor Patrick on January 14, 2011, which strikes the word "authority" each time it appears in the General Laws referring the MassDOT and substitutes the word "department" instead.

grounds of sovereign immunity. (The court will assume for discussion purposes that the MTA was not at any time an arm of the Commonwealth).[7] An assertion of Eleventh Amendment immunity is examined in two steps. See Fresenius Med. Care Cardiovascular Res., Inc. v. Puerto Rico and the Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 65 (1st Cir. 2003). The first and often dispositive consideration is "whether the state has indicated an intention – either explicitly by statute or implicitly through the structure of the entity – that the entity share the state's sovereign immunity." Redondo Constr. Corp., v. Puerto Rico Highway and Transp. Auth., 357 F.3d 124, 126 (1st Cir. 2004). The intention may be expressed in an entity's governing statute or implied through its structure, powers, limitations, and relationship to the state. Id. at 126-128. The second stage of the analysis asks "whether the state's treasury would be at risk in the event of an adverse judgment." Id. at 126. "[A] suit, although nominally aimed at an official, will be considered one against the sovereign 'if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act.'" Muirhead v. Mecham, 427 F.3d 14, 18 (1st Cir. 2005), quoting Dugan v. Rank, 372 U.S. 609, 620 (1963). See also Fresenius, 322 F.3d at 68 (when the factors point in conflicting directions, "then the dispositive question concerns the risk that the damages will be paid from the public treasury.").

_____

[7]Although MassPort remains in existence, all of its functions relevant to this lawsuit have been transferred to the MassDOT. Thus, if the MassDOT can lawfully claim immunity under the Eleventh Amendment, it is not bound by the prior (or present) legal status of either the MTA or MassPort. See Maysonet-Robles v. Cabrero, 323 F. 3d 43, 48 (1st Cir. 2003).

Surprenant, as noted, does not dispute that the MassDOT is an "arm of the state."

However, Surprenant contends that in creating the MassDOT, the Legislature waived

Eleventh Amendment immunity with regard to all ongoing litigation against the MTA. The

legislative language Surprenant has in mind states that "actions and proceedings against

or on behalf of the Massachusetts Turnpike Authority shall continue unabated and, from

and after the date of dissolution of the authority, may be completed against or by the

department."[8] Mass. Stat. 2009, ch. 25, § 133(d). In the alternative, Surprenant argues

that a simple amendment to her Complaint

> to add the current head of the MassDOT as a defendant will cure the ills
> Defendants complain of. It is black letter law that the Eleventh Amendment
> permits suits for prospective injunctive relief against state officials acting in
> violation of federal law. Frew v. Hawkins, 540 U.S. 431, 437 (U.S. 2004)
> (citing Ex parte Young, 209 U.S. 123 (1908)); Nieves-Marquez v. Puerto
> Rico, 353 F.3d 108, 123 (1st Cir. 2003) ("Under Ex parte Young, state
> officers do not have Eleventh Amendment immunity from claims for
> prospective injunctive relief").

Pl.'s Opp. at 1.

While it is true that the language cited by Surprenant does not operate to

automatically extinguish pending litigation, there is nothing in the statute or its wording that

would prevent or bind the MassDOT from asserting any of its available defenses, even

those that have the effect of terminating a lawsuit on jurisdictional grounds (as the choice

of the word "may" in the phrase "may be completed against or by the department"

---

[8]Completely unpersuasive is the legislative language Surprenant cites from Mass. Stat. 2009, ch. 120, § 42 (transferring the Tobin Bridge from MassPort to the MassDOT), which states that "[n]o existing right or remedy of any character shall be lost, impaired, or affected by this act." Eleventh Amendment immunity is patently an "existing right" accruing to the individual States.

indicates).  See Maysonet-Robles, 323 F.3d at 50-51 (finding a similar grant of continuing

authority over pending litigation to stop well short of an unequivocal consent to a waiver

of sovereign immunity).  Any hesitation must be strictly resolved in favor of the

Commonwealth as a waiver of sovereign immunity will not be implied.  Lane v. Pena, 518

U.S. 187, 192 (1996).  It may seem unfair that an immunity defense that was not available

to the MTA can be bestowed on the MassDOT as its successor by legislative fiat.  But, as

the First Circuit has made clear, the Eleventh Amendment enjoys a unique jurisdictional

status.  "Unlike a private individual or corporation, a State retains its sovereign immunity

as a 'personal privilege' and, whether it is the original defendant or is added as a party

later, it cannot be sued involuntarily."  Maysonet-Robles, 323 F.3d at 50, quoting Clark v.

Barnard, 108 U.S. 436, 447-448 (1883).[9]

Surprenant's assertion, that by adding the Secretary of the MassDOT as a named

defendant she can sidestep the Eleventh Amendment, is also unavailing.  A litigant may

not resort to the expedient of naming a state official in an action for prospective declaratory

or injunctive relief as a means of circumventing the Eleventh Amendment.  "The Ex parte

Young doctrine does not apply in cases where plaintiffs seek monetary relief for past

violations of federal law, regardless of whether the party the plaintiffs seek to designate

as a defendant is nominally a state officer sued in his official capacity."  Mills v. State of

---

[9]The facts in Maysonet-Robles are for all practical purposes identical to those here.
In Maysonet-Robles, the Legislature of the Commonwealth of Puerto Rico dissolved a
public housing corporation that was subject to being sued and transferred its functions to
the Housing Department of the Executive Branch.  In rejecting plaintiffs fairness argument,
the Court observed that the "Department is an arm of the State, regardless of its late
arrival at the courthouse as a successor in interest, and it must be accorded the same
respect due a State under the Eleventh Amendment . . . ."  Id. at 50.

Maine, 118 F.3d 37, 54 (1st Cir. 1997), citing Pennhurst State Sch. & Hosp. v. Halderman,

465 U.S. 89, 102-103 (1984), and Edelman v. Jordan, 415 U.S. 651, 668 (1974).[10]

Because the MassDOT is immune to suit in this court under the Eleventh Amendment, the

motion for judgment on the pleadings will be allowed.[11]

ORDER

For the foregoing reasons, defendants motion for judgment on the pleadings is

ALLOWED. The Clerk will enter judgment for defendants and close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

---

[10]As the Commonwealth points out, Surprenant has not asked the court for prospective injunctive relief other than the placing of all non-resident tolls in a constructive trust pending resolution of this lawsuit as insurance for a payout of damages should Surprenant prevail. (All other requested equitable relief is in the nature of substitute damages). As the Court observed in Mills, an award of prospective declaratory relief that has "much the same effect as a full-fledged award of damages or restitution by the federal court" is the kind of relief prohibited by the Eleventh Amendment. Id., 118 F.3d at 54-55, quoting Green v. Mansour, 474 U.S. 64, 73 (1985).

[11]Because sovereign immunity operates as a complete bar to further litigation, any comment on the Pike test issues that were the subject of discovery before the immunity defense was raised would be superfluous dicta. Suffice it to say, there is nothing cited in Surprenant's brief that would undermine Judge van Gestel's decision in Kelen v. Massachusetts Tpk. Auth., 2007 WL 1418510 (Mass. Super. May 3, 2007), that the resident toll structure program passes constitutional muster.